Francis J. "Casey" Flynn, Jr.
CA State Bar No. 304712
6220 W 3rd St # 115
Los Angeles, CA 90036
Telephone: (323) 424-4194
Email: francisflynn@gmail.com

**ATTORNEY FOR PLAINTIFF
AND THE PROPOSED CLASS**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MEGAN MCATEER, individually and on behalf of all others similarly situated,** | **CASE NO. 2:17-cv-7848____** |
| **PLAINTIFF** | **CLASS ACTION COMPLAINT** |
| **v.** | |
| **TARGET CORPORATION** | **PLAINTIFF'S CLASS ACTION COMPLAINT FOR** |
| **DEFENDANT** | (1) **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.*** |
| | (2) **VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, ET SEQ.** |
| | (3) **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, et seq.** |
| | (4) **BREACH OF EXPRESS WARRANTY** |
| | (5) **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY** |
| | (6) **VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT** |
| | (7) **NEGLIGENCE** |
| | (8) **FRAUD** |

113936v1

**(9) BREACH OF CONTRACT**
**(10) UNJUST ENRICHMENT**
**(11) DECLARATORY JUDGMENT**

**JURY TRIAL DEMANDED**

Plaintiff Megan McAteer ("Plaintiff"), individually and on behalf of all other similarly situated, by and through their undersigned counsel, brings this action against Target Corporation (hereinafter "Target" or "Defendant"), alleging, upon personal knowledge as to Plaintiff's individual actions and upon information and belief and/or counsel's investigations as to all other matters, the following:

**INTRODUCTION**

1. This is a class action lawsuit involving Up & Up Makeup Remover Cleansing Towelettes – Evening Calm (hereinafter, "Products") manufactured and sold by Defendant, and purchased by Plaintiff and consumers throughout the United States.

2. Target markets its Up & Up brand as "Quality needs priced to please. With Up & Up your satisfaction is 100% guaranteed or your money back."

3. Plaintiff and Class were not satisfied with the Products because they cause an allergic and/or strong irritating reaction, which turns the user's face red and causes them to develop a burning sensation. The user's skin can also get blotchy, swollen, including swelling around the eyes. Users of the Products, who suffered this allergic reaction, were required to use medicine like Cortisone 10 and Benadryl

to treat these injuries.

4.     The defective Products affected hundreds of thousands of consumers who purchased the Products at Target, causing damages for loss of value of the Products, anxiety, fright, irritating, burning, and/or allergic reactions caused by the chemical exposure and related expenses for treatment of these personal injuries and for other personal injuries, as described in more detail below.

## PARTIES

5.     Plaintiff Megan McAteer ("McAteer") is a citizen of the State of California, residing in Los Angeles, California.

6.     Plaintiff McAteer purchased a 25-count package of Target's Up & Up Cleansing Towelettes – Evening Calm from Target for personal and/or household to wash her face at the Beverly Connection Target store in Los Angeles County. Plaintiff McAteer developed an allergic reaction after using the Products in which her face developed a burning sensation and turned bright red.

7.     Manufacturer Defendant Target Corporation ("Target") is a Minnesota corporation with its principle place of business in Minnesota. At all times mentioned herein, Defendant Target manufactured, designed, and sold the Products in Targets stores and Target.com.

## JURISDICTION AND VENUE

8.     This action is within the original jurisdiction of this Court pursuant to 28 U.S.C. § 1332(d)(2) because: (i) there are 100 or more class members, (ii) there

is an aggregate amount in controversy exceeding $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.

9.     Defendant Target maintains offices and agents, including Target stores, in the Central District of California, as part of its usual and customary business.

10.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 (a)(2) and (a)(3) because Plaintiff purchased the Products at the Beverly Connection Target Store in Los Angeles County, California, which is located in the Central District.

## TARGET'S MATERIAL REPRESENTATIONS AND OMISSIONS

11.     Target markets its Up & Up brand as "Quality needs priced to please. With up & up your satisfaction is 100% guaranteed or your money back."

12.     Target's Up & Up Makeup Remover Cleansing Towelettes – Evening Calm are marketed as "ultra soft cloths" that "***gently*** removes makeup, even waterproof mascara." (emphasis added).

13.     Target's Products, however, are so harsh that they cause users' skin to develop an allergic reaction – the Products cause the users' face to develop a burning sensation that turns the skin red.

14.     Target lists the ingredients in the Products: Water, Isohexadecane, Dicaprylyl Ether, Octyldodecyl Stearoyl Stearate, Hexylene Glycol, Glycerin, Ethylhexyl Hydroxystearate, Lauryl Glucoside, Propylene Glycol, Sorbitan

PLAINTIFF'S CLASS ACTION COMPLAINT

Monolaurate, Polyglyceryl-2 Dipolyhydroxystearate, Chamomilla Recutita (Matricaria) Flower Extract, Centaurea Cyanus Flower Extract, Cucumis Sativus (Cucumber), Fruit Extract, Camellia Oleifera Leaf Extract, Aloe Barbadensis Leaf Juice, Acrylates/C10-30 Alkyl Acrylate Crosspolymer, Tocopheryl Acetate, Citric Acid, Disodium EDTA, Aminomethyl Propanol, Phenoxyethanol, Iodopropynyl Butylcarbamate, and Fragrance.

15.   The only Allergens & Warnings that accompany the Target Up & Up label are: "Keep out of reach of children. For external use only. As with most facial cleansers, getting product in eyes may cause stinging. If this occurs, rinse eyes thoroughly with warm water."

16.   Target claims "up&up[ ] makeup remover cleansing towelettes in evening calm help **gently** remove makeup in one easy step, while providing a calming scent. As you wipe your face, enjoy the soothing aroma released as the towelette lifts away long-lasting makeup (including waterproof mascara). **No rinsing necessary**. For **all** skin types." *See*, https://www.target.com/p/makeup-remover-cleansing-towelettes-25-ct-up/-/A-49102557. (Emphasis added).

17.   Target markets the product as being comparative to Neutrogena Night Calming Makeup Remover Cleansing Towelettes.   Neutrogena Night Calming Makeup Remover Cleansing Towelettes, however, contains the following ingredients: Cyclopentasiloxane, Isononyl Isononanoate, Isostearyl Palmitate, Pentaerythrityl Tetraethylhexanoate, Cetyl Ethylhexanoate, Hexylene Glycol, PEG-

Caprylic/Capric Glycerides, Phenoxyethanol, Fragrance, Sucrose Cocoate, Carbomer, Sodium Hydroxide, PEG-4 Laurate, Benzoic Acid, Dehydroacetic Acid, Iodopropynyl Butylcarbamate, Ethylhexylglycerin, Polyaminopropyl Biguanide. See, http://www.neutrogena.com/skin/skin-cleansers/makeup-remover-cleansing-towelettes-night-calming/6805355.html.

18.   In fact, the majority of the ingredients are different.  Neutrogena Night Calming Makeup Remover Cleansing Towelettes and the Products only share four (4)[1] of the same ingredients – namely, Water, Hexylene Glycol, Phenoxyethanol, and Iodopropynyl Butylcarbamate.

19.   Furthermore, Target markets the product as: "These hypoallergenic towelettes are alcohol and paraben free, non-oily and gentle on eye area. They have been dermatologist and ophthalmologist tested and are safe for contact lens wearers to use." *See* https://www.target.com/p/makeup-remover-cleansing-towelettes-25-ct-up/-/A-49102557.

20.   Indeed, Target markets the Products as being:

- alcohol free*[2]

- paraben free

- for all skin types

---

[1] The products also share the ingredient "Fragrance," but without discovery, Plaintiff is unsure as to whether the fragrances are the same.
[2]      * does not contain ethanol, isopropanol or rubbing alcohol

PLAINTIFF'S CLASS ACTION
COMPLAINT

- Dermatologist & Ophthalmologist tested

- Gently removes makeup, even waterproof mascara.

21.   Target further represents the following about the Up & Up Cleansing Towelettes:

- Skin Concern: basic care

- Recommended Skin Type: normal

- Used For: basic cleansing

- For Use On: Eye Area, Face

- Product Form: Wipe

- Product Warning: no warning applicable

- Health Facts: hypoallergenic, Contains Aloe, contains vitamin E

- Includes: Face Cleanser

- Package Quantity: 25

- TCIN: 49102557

- UPC: 074887707802

- Store Item Number (DPCI): 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

**IRRITATING AND/OR ALLERGENIC INGREDIENTS IN TARGET UP & UP FACIAL CLEANSING TOWELETTES (EVENING CALM)**

22.   Despite being touted as a product that "gently removes makeup" and "alcohol-free," Target uses a number of harsh chemicals and known human allergens in the Products, such as Octyldodecyl Stearoyl Stearate, Hexylene Glycol,

Tocopheryl Acetate, Aminomethyl Propanol, Phenoxyethanol, Iodopropynyl Butylcarbamate, and Fragrance, among others.

**Octyldodecyl Stearoyl Stearate**

23. Octyldodecyl stearoyl stearate is a lipid-based synthetic skin conditioning agent. According to the Environmental Working Group's Skin Deep® Cosmetics Database, Octyldodecyl Stearoyl Stearate is known to be an irritant to skin, eyes, or lungs (High Concern).[3]

24. Additionally, Octyldodecyl stearoyl stearate has been identified in a Cosmetic Ingredient Review Assessment as a human irritant - strong evidence (only for Products for use around the eyes, on the skin, or may be aerosolized (airborne)).

**Hexylene Glycol**

25. Hexylene Glycol is a small molecular weight surfactant, which functions as a fragrance ingredient; a solvent; a viscosity decreasing agent; emulsifier; a perfume, a skin conditioning agent; and a surfactant.[4] According to the Environmental Working Group's Skin Deep® Cosmetics Database, Hexylene Glycol is known to be an irritant to skin, eyes, or lungs. Additionally, Hexylene Glycol has been classified as an irritant by the "European Union – Classification and Labelling

---

[3] https://www.ewg.org/skindeep/ingredient/704241/OCTYLDODECYL_STEAROYL_STEARATE/#.WYxSCzw8KaM

[4] http://www.ewg.org/skindeep/ingredient/702849/HEXYLENE_GLYCOL/#.WbabW8iGOHk (Last Visited: 9/11/2017)

*See*

*Footnote continued on next page*

PLAINTIFF'S CLASS ACTION COMPLAINT

[*sic*]".[5]

**Tocopheryl Acetate**

26.    Tocopheryl Acetate is a chemical compound that consists of acetic acid and tocopherol (vitamin E) that functions as an antioxidant, skin-conditioning agent, and skin conditioner.[6]

27.    The concern with Tocopheryl Acetate is that it can be potentially irritating to skin, causing redness, rashes, and potential allergic reactions. [7]

28.    According to the Cosmetic Ingredient Review (CIR) of the ingredient, tocopheryl acetate is a human skin toxicant or allergen.   According to the Environmental Working Group Skin Deep® Cosmetic Database, the evidence is strong.[8]

**Aminomethyl Propanol**

29.    Aminomethyl Propanol is a small molecular weight buffering agent that functions as a pH Adjuster and buffering agent.[9]   According to the Environmental Working Group's Skin Deep® Cosmetics Database, Aminomethyl Propanol is an

---

[5] *See* http://www.ewg.org/skindeep/ingredient/702849/HEXYLENE_GLYCOL/#.WbabW8iGOHk (Last Visited: 9/11/2017)

[6] http://www.ewg.org/skindeep/ingredient/706569/TOCOPHERYL_ACETATE/#.WbafEsiGOHk

[7] https://www.annmariegianni.com/ingredient-watch-list-tocopheryl-acetate-the-potentially-irritating-form-of-vitamin-e/; *See      also*, http://www.ewg.org/skindeep/ingredient/706569/TOCOPHERYL_ACETATE/#.WbafEsiGOHk

[8] http://www.ewg.org/skindeep/ingredient/706569/TOCOPHERYL_ACETATE/#.WbafEsiGOHk

[9] http://www.ewg.org/skindeep/ingredient/700348/AMINOMETHYL_PROPANOL/#.Wbagj8iGOHk

*Footnote continued on next page*

PLAINTIFF'S CLASS ACTION COMPLAINT

irritant to skin, eyes, or lungs. [10]   Additionally, Aminomethyl Propanol has been classified as an irritant by the European Union – Classification and Labelling.[11]

**Phenoxyethanol**

30.   Phenoxyethanol is a preservative used in cosmetics and personal care Products that functions as a fragrance ingredient and preservative.[12]   According to the Environmental Working Group's Skin Deep® Cosmetics Database, Phenoxyethanol is an irritant to skin, eyes, or lungs. [13] Additionally, Phenoxyethanol has been classified as an irritant by the European Union – Classification and Labelling.[14]

**Iodopropynyl Butylcarbamate**

31.   Iodopropynyl Butylcarbamate is used as a preservative in cosmetic formulations; it is acutely toxic by inhalation and should not be used in Products that can be aerosolized or inhaled.[15]   Iodopropynyl Butylcarbamate functions as a preservative. [16]   According to the Environmental Working Group's Skin Deep®

---

[10]
http://www.ewg.org/skindeep/ingredient/700348/AMINOMETHYL_PROPANOL/#.Wbagj8iGOHk
[11]
http://www.ewg.org/skindeep/ingredient/700348/AMINOMETHYL_PROPANOL/#.Wbagj8iGOHk
[12] http://www.ewg.org/skindeep/ingredient/704811/PHENOXYETHANOL/#.Wbag4MiGOHk
[13] http://www.ewg.org/skindeep/ingredient/704811/PHENOXYETHANOL/#.Wbag4MiGOHk
[14] http://www.ewg.org/skindeep/ingredient/704811/PHENOXYETHANOL/#.Wbag4MiGOHk
[15]
http://www.ewg.org/skindeep/ingredient/703111/IODOPROPYNYL_BUTYLCARBAMATE/#.WbahLsiGOHk
[16]
http://www.ewg.org/skindeep/ingredient/703111/IODOPROPYNYL_BUTYLCARBAMATE/#.WbahLsiGOHk

*Footnote continued on next page*

PLAINTIFF'S CLASS ACTION
COMPLAINT

Cosmetics Database, Iodopropynyl Butylcarbamate is a human toxicant or allergen (strong evidence) per a Cosmetic Ingredient Review Assessment. [17]   Additionally, Iodopropynyl Butylcarbamate has been shown in one or more human case studies to have immune or allergenic effects. [18]

**Fragrance**

32.   The word "fragrance" or "parfum" on the product label represents an undisclosed mixture of various scent chemicals and ingredients used as fragrance dispersants such as diethyl phthalate.[19]  Fragrance mixes have been associated with allergies, dermatitis, respiratory distress and potential effects on the reproductive system. [20]  Fragrance functions as a deodorant, masking agents, or perfuming agent.[21] According to the Environmental Working Group's Skin Deep® Cosmetics Database, Fragrance is a known human immune system toxicant or allergen according to the Scientific Committee on Cosmetic Products and Non-Food Products Intended for Consumers ("SCCNFP") and Tatyana Hamilton & Gillian C. de Gannes, MD. [22] Additionally, one or more human case studies show significant immune or allergenic effects. [23]

---

[17] http://www.ewg.org/skindeep/ingredient/703111/IODOPROPYNYL_BUTYLCARBAMATE/#.WbahLsiGOHk
[18] http://www.ewg.org/skindeep/ingredient/703111/IODOPROPYNYL_BUTYLCARBAMATE/#.WbahLsiGOHk
[19] http://www.ewg.org/skindeep/ingredient/702512/FRAGRANCE/#
[20] http://www.ewg.org/skindeep/ingredient/702512/FRAGRANCE/#
[21] http://www.ewg.org/skindeep/ingredient/702512/FRAGRANCE/#
[22] http://www.ewg.org/skindeep/ingredient/702512/FRAGRANCE/#
[23] http://www.ewg.org/skindeep/ingredient/702512/FRAGRANCE/#

PLAINTIFF'S CLASS ACTION COMPLAINT

## PLAINTIFF AND THE CLASS' INJURIES

33.     Given the above, one or more of the Products' active ingredients creates an irritating and/or allergic reaction causing a burning sensation on the face and turns the face red. The effect of this ingredient(s) renders the Products dangerous and unsafe for sale as an over-the-counter product.

34.     Defendant failed to properly warn consumers, including Plaintiff, either in their extensive television, print, and online marketing of the Products or on the package labeling, that they were at risk of significant injuries upon proper use of the Products. Defendant continued to conceal the dangers of the Products by failing to appropriately and fully discontinue and recall the Products, by continuing to claim the Products are gentle when properly applied, by offering more of the Products to the market and by failing to warn consumers, including Plaintiff that its Products contained known irritants

35.     Plaintiff and the Class have suffered injury in fact and lost money as a result of their use of the Up & Up Makeup Remover Cleansing Towelettes – Evening Calm.

36.     Several Complaints appear online complaining of the same issue:

Up and Up in purple/white makeup remover (would not recommend)
3 out of 5 stars submitted by  JenLynTN — 16 months ago

Please be careful it could cause your face to have a reaction to this product. It is a very soft wipe and smells great.

*See*,   https://www.target.com/p/makeup-remover-cleansing-towelettes-

<u>25-ct-up/-/A-49102557</u>

1 out of 5 stars

submitted by JK — 3 months ago
Caused the area under my eyes to break out in red bumps shortly after using. Never had this reaction to a makeup remover wipe before. Don't like how the wipe stretches and feels thin either. Would not recommend.

*See*,   https://www.target.com/p/makeup-remover-cleansing-towelettes-25-ct-up/-/A-49102557

Ajackson87
on 11/14/2015 12:41:00 AM
More reviews by Ajackson87

Age: 25-29  Skin: Combination, Fair, Not Sure  Hair: Blond, Other, Other Eyes: Hazel

I wish I would have read all the reviews sooner. My eyes and face are also burning and stinging bad. My eyes feel swollen and it only after the 2nd use. I can't believe these are still being sold after all the problems!!!

*See*,
https://www.makeupalley.com/product/showreview.asp?ItemId=136680/Target---Up-&-Up-Makeup-Remover-Cleansing-Towelettes/Unlisted-Brand/Eye-Makeup-Remover

kraej22
on 1/31/2015 2:09:00 PM
More reviews by kraej22
Age: 19-24
Skin: Combination, Fair, Not Sure
Hair: Red, Other, Other
Eyes: Green
NEVER BUY THIS! - RED PUFFY ITCHY EYES

I never have problems with sensitivity to certain chemicals so I have no idea why these wipes affected me so badly. It all started two months ago when I purchased my first pack of these wipes. All was well, they removed my makeup great but I started to notice my eyelid skin getting a little rough and patchy. I tried lotion and that only helped temporarily. My makeup started to look awful on my eyelids and the problem started to get worse. I woke up one morning after using the wipes the prior night and my eyelids were swollen and itchy. I had no idea what the problem was because I always wear makeup so my eyes never had time to recover and plus I get Ipsy bags so I thought maybe it was something from a bag I got recently.

After a while I went to the doctor and she said my eye is having an allergic reaction to something (she suggested my finger nail polish as the culprit but I knew better). I eventually was so desperate that I warded off all makeup and went naked faced for a few weeks, my self-confidence started declining a bit and I missed wearing makeup so

PLAINTIFF'S CLASS ACTION
COMPLAINT

much! It is not only something that I like to enhance my features but I have fun putting it on and buying it. My boyfriend of all people was the one to mention the makeup wipes and he bought me some all natural ones at the store because he has felt so bad for me through all of this. I wore some makeup for the first time yesterday and took my makeup off with the new wipes (Simple brand) and then I went to bed and woke up this morning with no itchy, rough or swollen eyelids! :) I decided to look up and see if anyone else has had this problem and oh man I had no idea so many people went through this as well! I just wish I would have realized what it was sooner!

I will never repurchase and honestly feel the need to ward off all other up and up products as well.

88loloxoxo88
on 7/22/2014 7:25:00 PM
Age: 18 & Under

Skin: Sensitive, Fair, Not Sure

Hair: Blond, Other, Other

Eyes: Blue

PLEASE DO NOT USE THIS PRODUCT! I got it at Target on sale and I thought I would try it. Big mistake. After about a week or two of using it, my under eyes got very red, swollen, itchy, dry, scaly, and wrinkly. It was so terrible! I had to wear huge sunglasses everywhere I went so nobody would notice. If you've used this product and have the same results, try a bit of Cortizone 10 or a like product. After a few days the redness and burning sensation should go away. I repeat, never use this product. Target needs to do something about this
Report Abuse
3 of 4 people found this helpful.

*See*
https://www.makeupalley.com/product/showreview.asp/page=2/pagesize=10/ItemID=136680/

fshadow01
on 10/4/2013 3:11:00 AM
Age: 30-35

Skin: Combination, Fair-Medium, Not Sure

Hair: Red, Other, Other

Eyes: Blue

I used these wipes for 2 days. The first day I didn't realize anything different. After using these the second day, hours later my face started to burn and feel like it felt like it was on fire. Like someone threw acid in my face. I cant begin to tell you what I have experienced using these wipes. My eyes are literally swollen, the corners of my eyes have burned and the skin is removed. My face is swollen, red, blotchy red marks all

-14-

PLAINTIFF'S CLASS ACTION
COMPLAINT

over. I have a awful rash on my neck as well. I cant sleep. Right now its 2:45am, as I am writing this review. I made a appointment to see the dermatologist tomorrow morning. The pain started late last night. I missed work today. Please don't use these wipes. I use the brand name Neutrogena wipes all the time and never have experienced a problem. I am not allergic to anything besides something in this product. I have never had a reaction like this in my life. Since yesterday I have been putting vaseline all over my face all day and night to keep it moist and taking Benadryl. Today I called and made a appointment with the doctor for tomorrow morning. I hope the burning feeling stops. I could cry. This is awful!

I hope after seeing all the reviews on here, target stops selling these. Please!!!!!

*See*
https://www.makeupalley.com/product/showreview.asp/page=2/pagesize=10/ItemID=136680/

Skye B.
Des Moines, IA
362 reviews
March 2, 2016, 10:17 p.m.
1 Star

I typically like targets brand of products but I was not impressed with. I bought the evening calm gentle makeup removing towelettes. They smell great and leave my skin feeling soft but that's where it stops. It doesn't remove my mascara easily- I have to really scrub and it still doesn't get all of it. Also this product really irritates my sensitive eyes. After using it my eyes are definitely irritated and when I wake up in the morning they are super puffy and swollen all over. Won't buy this product again.

*See*,        https://www.influenster.com/reviews/up-up-makeup-remover-cleansing-towelettes?review_sort=lowest+grade.

## COSMETIC ORGANIZATIONS

**Environmental Working Group's Skin® Deep Cosmetic Database**

37.     Environmental Working Group ("EWG')'s Skin Deep Cosmetics Database is an online guide that currently contains information on 8,920 personal care product ingredients, culled from ingredient labels on Products and from the scientific and industry literature on personal care Products.[24]

---

[24] https://www.ewg.org/skindeep/site/about.php#.WbazBsiGOHk

38.   EWG assigns a standardized name to each ingredient in the Skin Deep database, generally taken as the International Nomenclature for Cosmetic Ingredients (INCI) standard, with some exceptions where alternate names are more easily recognized by consumers.[25]

39.   Each of these ingredient names is associated with a unique ingredient identification number in the EWG database.[26]

40.   Skin Deep goal is to provide information on how the chemicals in Products may affect one's health and the environment so that consumers can make informed purchasing decisions — and help transform the marketplace.

**Cosmetic Ingredient Review ("CIR") Expert Panel**

41.   The Cosmetic Ingredient Review ("CIR") Expert Panel, is an independent, non-profit scientific body established in 1976 and initiated by the Personal Care Products Council (the Council) at the suggestion and with the support of the Food and Drug Administration (FDA) and the Consumer Federation of America (CFA) to thoroughly review and assess the safety of ingredients used in cosmetics in the U.S.

42.   The CIR Expert Panel consists of world-renowned scientists and physicians who have been publicly nominated by either consumers, scientific and medical groups, government agencies, or industry. Members of the Panel must meet

---

[25] https://www.ewg.org/skindeep/site/about.php#.WbazBsiGOHk
[26] https://www.ewg.org/skindeep/site/about.php#.WbazBsiGOHk

PLAINTIFF'S CLASS ACTION COMPLAINT

the same conflict of interest requirements regarding financial interests as special non-government advisory experts to FDA.

43.    This Expert Panel conducts their reviews in a science-based, open, unbiased, and transparent manner and publishes the results of its work in peer-reviewed scientific literature. FDA, CFA and the Council provide non-voting liaisons to the panel and are actively involved in the comment and discussion process. The CIR process includes multiple opportunities for public comment and open, public discussion of the monograph by the Expert Panel.

## **CLASS ACTION ALLEGATIONS**

1.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this class action on behalf of the following National Class and/or California Class, collective referred to as the "Class" or "Classes":

> **National Damages Class:** All residents of the United States who purchased the Products in the United States, and who suffered economic, personal, and/or financial injuries from use of the Product.

> **California Damages Class:** All residents of California (the "California Class") who purchased the Products and who suffered economic, personal, and/or financial injuries from use of the Product.

Excluded from the National Class and the California Class are: Defendant, their officers, directors and employees, and any entity in which any Defendant has a controlling interest, the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact or assignees thereof, and the Court.

44.    Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), at least one Class member is of diverse citizenship from Defendant; there are more

than 100 Class members nationwide; and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

45.    Throughout discovery in this litigation, Plaintiff may find it appropriate and/or necessary to amend the definition of the Classes. Plaintiff will further define and designate a class definition when they seek to certify the Classes alleged herein.

46.    **Ascertainable Classes:** The National and the California Classes are ascertainable in that each member can be identified using information contained in Defendant's records and through the use of electronic payment processing systems, credit cards, bank statements, paper receipts, the Products itself, and other sources.

47.    **Common Questions of Law or Fact Predominate:** In accordance with Fed. R. Civ. P. 23(2), there are questions of law and fact common to the Classes and which predominate over any individual issues.  Common questions of law and fact include, without limitation:

a.    Whether the Products are, or were, defective;

b.    Whether Defendant owed a duty to the class members under the applicable statutes and law;

c.    Whether Defendant knew the Products were defective when offered for sale to the public;

d.    Whether Defendant misled consumers and concealed defects in the Products;

e.    Whether Defendant violated consumer protection and business

PLAINTIFF'S CLASS ACTION
COMPLAINT

law statutes of California (as described in more detail below);

   f.   Whether Defendant was unjustly enriched by their sale of the defective Products to consumers;

   g.   Whether members of the Class have suffered damages, including personal injuries from using the tainted and defective Products;

   h.   Whether Defendant has breached the express or implied warranties for the Products, or the provisions of the Magnuson-Moss Warranty Act, when they are used for their intended purpose;

   i.   Defendant's vicarious liability for the actions of their employees;

   j.   The extent of damages caused by Defendant's willful violations;

   k.   The type of damages and restitution that should be granted to Plaintiff and members of the Class;

   l.   Whether Defendant breached the Implied Warranty of Merchantability as set forth in the Uniform Commercial Code;

   m.   Whether Defendant breached the Implied Warranty of Fitness;

   n.   Whether Plaintiff and the Classes are entitled to compensatory damages, restitution, and the amounts thereof respectively against Defendant; and

   o.   Whether Defendant be ordered to disgorge, for the benefit of Plaintiff and the Classes, all or part of their ill-gotten profits received from the sale of the Products, and/or to make full restitution to Plaintiff and the Class members.

   48.   **Numerosity:** In accordance with Fed. R. Civ. P. 23(1), the Classes are

PLAINTIFF'S CLASS ACTION
COMPLAINT

so numerous that joinder of all members is impracticable.  While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the Classes include thousands of members, and the National Class includes millions of members.

49.    **Typicality:** Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class member, was exposed to virtually identical conduct.

50.    **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Classes in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Classes. Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of all other Class members.

51.    Plaintiff has retained competent counsel, experienced in class action litigation and consumer protection law.

52.    **Superiority:** In accordance with Fed. R. Civ. P. 23(b), *et seq*, the class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of individual citizens of the United States to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would

PLAINTIFF'S CLASS ACTION COMPLAINT

require. The exact number of United States consumers who purchased the Products can be obtained through discovery and from Defendant's business records; Class action treatment also will permit the adjudication of relatively small claims by certain class members, who could not individually afford to litigate a complex claim against a large corporate defendant. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical, as the cost of litigation is almost certain to exceed any recovery they would obtain.

53.     The nature of this action and the nature of laws available to Plaintiff and the Classes make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Classes for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with vastly superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each member of the Classes to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

**COUNT I**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.***
**(ON BEHALF OF THE CALIFORNIA CLASS)**

PLAINTIFF'S CLASS ACTION
COMPLAINT

54.     Plaintiff hereby incorporates all paragraphs of Plaintiff's Class Action Complaint against Defendant as if fully set forth herein.

55.     Defendant's acts and practices, described herein, constitute unlawful, unfair, and/or fraudulent business practices in violation of the Unfair Competition Law, Business & Professions Code sections 17200 *et seq.* ("UCL").

56.     Specifically, Defendant has violated the UCL by engaging in the following unlawful, unfair, and/or fraudulent business practices:

a.      Making material omissions and misrepresentations regarding the benefits and the efficacy of the Products, as discussed in the preceding paragraphs;

b.      Making material omissions and misrepresentations regarding the Products' hazardous effects, knowing that Plaintiff and other consumers would purchase the Products in reliance upon the previously described misrepresentations;

c.      Violating the California Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA");

d.      Violating Section 5 of the FTC; and/or

e.      Breaching the Contract;

f.      Negligence; and/or

g.      Unjust Enrichment.

57.     These material omissions and misrepresentations were made with the actual knowledge of Defendant.

58.     Defendant intended for Plaintiff to rely upon the material omissions and

-22-

misrepresentations to induce them to purchase the Products.

59.     The material omissions and misrepresentations set forth herein were material to Plaintiff, and if Plaintiff had known that the products cause allergic reaction that would burn and redden her face, Plaintiff would not have bought it.

60.     The utility of Defendant's conduct is significantly outweighed by the gravity of the harm they impose on Plaintiff and the Class. Defendant's acts and practices are oppressive, unscrupulous, or substantially injurious to consumers.

61.     The above-described unfair, unlawful, and/or fraudulent business practices conducted by Defendant present a threat and likelihood of harm to members of the Class in that Defendant has systematically perpetrated and continue to perpetrate the unfair, unlawful, and/or fraudulent conduct upon members of the public by engaging in the conduct described herein.

62.     Plaintiff and the Class have suffered harm as a proximate result of the wrongful conduct of the Defendant alleged herein, and therefore bring this claim for relief for restitution and disgorgement. Plaintiff is a person who has suffered injury in fact and has lost money and property as a result of such unfair competition.

63.     Pursuant to Business and Professions Code §§ 17200 and 17203, Plaintiff, on behalf of herself and the Class, seeks an order of this Court: enjoining Defendant from continuing to engage in the deceptive practices contained herein. Plaintiff further requests an order awarding Plaintiff and the Class restitution and disgorgement of profits acquired by Defendant by means of such unfair, unlawful,

and/or fraudulent acts and/or practices, so as to deter Defendant and to rectify Defendant's unfair, unlawful, and/or fraudulent practices and to restore any and all monies to Plaintiff and the Class, which are still retained by Defendant, plus interest and attorneys' fees and costs pursuant to, *inter alia*, Code of Civil Procedure section 1021.5.

64.   As a direct and proximate result of Defendant's conduct, Plaintiff and the Class were damaged.

65.   This Court may award attorney's fees to Plaintiff and the Class. Defendant's conduct, as set forth above, is likely to deceive members of the public and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

66.   To the extent that the conduct as set forth above is ongoing and continues to this date, Plaintiff, the Class members, and the general public are, therefore, entitled to the relief described herein.

67.   Defendant, through their deceptive trade practices as described herein, have obtained money from Plaintiff and members of the Class.  Plaintiff, in fact, has been injured by Defendant's conduct, as have members of the Class.

68.   Plaintiff, individually and as a member of the Class, has no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

69.   As such, Plaintiff seeks injunctive relief to enjoin the practices described herein.

PLAINTIFF'S CLASS ACTION
COMPLAINT

70.    In bringing this action, Plaintiff has engaged the services of attorneys and has incurred reasonable legal expenses in an amount to be proved at trial.

**COUNT II**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, ET SEQ.**
**(ON BEHALF OF THE CALIFORNIA CLASS)**

71.    Plaintiff hereby incorporates all paragraphs (except those relating to damages) of Plaintiff's Class Action Complaint against Defendant as if fully set forth herein.

72.    This cause of action is brought pursuant to Civil Code § 1750, et seq., the Consumers Legal Remedies Act ("CLRA"), on behalf of a Class as defined herein.

73.    Defendant is a "person" within the meaning of Cal. Civ. Code sections 1761(c) and 1770.

74.    Plaintiff and members of the proposed class are "consumers" within the meaning of Cal Civ. Code §§ 1761(d) and 1770.

75.    Defendant's Products are "goods" as defined by Cal. Civ. Code § 1761(a).

76.    The policies, acts, and practices described herein were intended to result in the sale of the Products to the consuming public and violated and continue to violate § 1770(a)(5) of the CLRA by representing that the Products have characteristics, benefits, uses, or quantities which they do not have.

77.    The policies, acts, and practices described herein were intended to result

in the sale of the Products to the consuming public and violated and continue to violate § 1770(a)(7) of the CLRA by representing that the Products are of a particular standard, quality, grade, or style, when they are of another.

78.    The policies, acts, and practices described herein were intended to result in the sale of the Products to the consuming public and violated and continue to violate § 1770(a)(9) of the CLRA by advertising the Products with the intent not to sell them as advertised.

79.    The policies, acts, and practices described herein were intended to result in the sale of the Products to the consuming public and violated and continue to violate § 1770(a)(14) by representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

80.    The policies, acts, and practices described herein were intended to result in the sale of the Products to the consuming public and violated and continue to violate § 1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

81.    The policies, acts, and practices described herein were intended to result in the sale of the Products to the consuming public and violated and continue to violate § 1770(a)(19) by inserting an unconscionable provision in the contract.

82.    Defendant fraudulently deceived Plaintiff and the Class, and intentionally misrepresented and concealed material facts from Plaintiff and the

Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

83.     Defendant knew that the Products do not cause the benefits and results contained in their advertisements and/or those representations made on the packaging for the Products.

84.     Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights and Defendant was wanton and malicious in its concealment of the same.

85.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations and material omissions on the packaging of Products and for the advertisement of these Products.

86.     Defendant's unfair or unlawful acts, practices, representations, omissions, and courses of conduct, as described herein, were undertaken by Defendant in a transaction intended to result in, and which did result in, the sale or lease of goods or services to consumers.

87.     As a direct and proximate result of Defendant's violations of law, Plaintiff has been injured.

88.     Plaintiff is concurrently serving each Defendant with a CLRA notification and demand letter via certified mail, return receipt requested. See, Exhibit B - CLRA Letter.

89.      The notice letter sets forth the relevant facts, notifies each Defendant of

PLAINTIFF'S CLASS ACTION COMPLAINT

its CLRA violations, and requests that each Defendant promptly remedy those violations.

90.   Under the CLRA, a plaintiff may without prior notification file a complaint alleging violations of the CLRA that seeks injunctive relief only. Then, if the Defendant does not remedy the CLRA violations within 30 days of notification, the plaintiff may amend her or his CLRA causes of action without leave of court to add claims for damages. Plaintiff, individually and on behalf of the class, will amend this complaint to add damages claims if Defendant do not remedy their violations as to Plaintiff and the Class Members within the statutory period.

91.   Under the CLRA, Plaintiff is entitled to a permanent injunction prohibiting practices that violate the CLRA.

92.   Defendant's practices, acts and courses of conduct in connection with the sale of its Products, as described above, are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. As a result of Defendant's acts and practices as alleged in this Complaint, Plaintiff and the Class are entitled to injunctive relief prohibiting Defendant from continuing in the future the unlawful, unfair or fraudulent practice as described herein and all relief allowed for violation of the CLRA.

93.   Plaintiff and the Class reasonably believed and/or depended on the material false and/or misleading information provided by, or omitted by, Defendant with respect to Defendant's unfair acts and deceptive practices.

PLAINTIFF'S CLASS ACTION COMPLAINT

94.     By reason of the foregoing, Defendant's unlawful methods, acts, or practices as described herein has caused damage to Plaintiff and the Class Members, entitling them to injunctive relief.

95.     Pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff, on behalf of Plaintiff's self and the Class, demand judgment against Defendant under the CLRA for injunctive and equitable relief only to enjoin the practices described herein.

96.     Plaintiff, individually and as a member of the Class, has no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

97.     Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit A is the affidavit showing that this action has been commenced in the proper forum.

98.     In bringing this action, Plaintiff has engaged the services of attorneys and has incurred reasonable legal expenses in an amount to be proved at trial.

99.     Plaintiff is also entitled to recover their attorneys' fees, costs, and expenses.

## COUNT III
### FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, et seq.
### (ON BEHALF OF THE CALIFORNIA CLASS)

100.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein.

101.    This cause of action is brought pursuant to Business and Professions Code § 17500, et seq., on behalf of a Class consisting of all persons who purchased the Products in the United States for personal use

102.   In their advertising of the Product, Defendant made false and misleading statements regarding the benefits and the efficacy of the Product, as discussed in the preceding paragraphs.

103.   Defendant's advertising claims about the Products, as alleged in the preceding paragraphs, are false, misleading, unsubstantiated and unreasonable. In addition, Defendant deliberately omitted material facts regarding the Products' hazardous effects, knowing that Plaintiff and other consumers would purchase the Products in reliance upon the previously described misrepresentations.

104.   Defendant is aware that the claims that they make about the Products are false, misleading, unsubstantiated, and unreasonable. Defendant is also aware of the Products' defects, i.e. causing irritation, burning, and other adverse effects including but not limited to causing rashes, blotchy skin, swelling, swelling and itchy eyes.

105.   Plaintiff and other consumers were entitled to disclosure of these defects, as the risk of these dangers would be a material fact in a consumer's decision to purchase the Products and Defendant's disclosure is the only way consumers could have learned of these risks.

106.   As alleged in the preceding paragraphs, the misrepresentation and omission by Defendant of the material facts detailed above constitutes false advertising within the meaning of California Business & Professions Code § 17500.

107.   In addition, Defendant's use of various forms of advertising media to

PLAINTIFF'S CLASS ACTION
COMPLAINT

advertise, call attention to or give publicity to the sale of goods or merchandise that are not as represented constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business & Professions Code §§ 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business & Professions Code § 17500.

108.   Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of advertising the sale and use of the Products.

109.   Likewise, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such dangers of its Products as described herein, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations and defects in an amount to be determined at trial.

110.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's omissions and false representations. Indeed, Plaintiff purchased the Products in reliance on Defendant's claims the Product was safe and capable of delivering the advertised benefits. Plaintiff would not have purchased the Product if she had known that the advertising as described herein was false.

PLAINTIFF'S CLASS ACTION COMPLAINT

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**
**(ON BEHALF OF ALL CLASSES)**

111.   Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

112.   Defendant was and is at all relevant times "merchants" within the meaning of the Uniform Commercial Code ("UCC").

113.   Defendant manufactured, distributed, and marketed the Products, which are "goods" within the meaning of the UCC and other applicable commercial codes.

114.   Defendant expressly warranted in their marketing and packaging of the Products that said Products are a safe, more effective product than other makeup removing towelettes, marketed as "ultra soft cloths" that "*gently* removes makeup, even waterproof mascara" and that the Products are for "all skin types."   In reality, the Products are so harsh that they cause users' skin to develop a reaction; to wit, a burning sensation that turns the skin red, blotchy, swollen, including swelling around the eyes.   As a result, the user of the Products is required to use medicine like Cortisone 10 and Benadryl.

115.   Defendant's claims constitute an affirmation of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise.   Plaintiff placed importance on Defendant's claims.

116.   All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

PLAINTIFF'S CLASS ACTION
                                                    COMPLAINT

117.   Defendant breached the terms of its warranties by not providing Products that can perform as advertised.

118.   If Defendant attempts to limit the remedies to which Plaintiff and members of the proposed Classes are entitled, or the period within which to bring claims, Defendant is estopped by their direct misrepresentations to consumers regarding the nature of the Products. In addition, and in the alternative, any such limitation is unconscionable and void based on Defendant's knowledge of the defect at the time of sale, and because any such limitation creates a warranty that fails of its essential purpose. By virtue of the defective design or manufacture, Defendant knew or should have known that the Products were at all times defective, including at the time Plaintiff and Class members purchased the Products.

119.   Defendant has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Defendant's knowledge, Defendant refuses to honor its warranty, even though it knows of the inherent defect in the Products.  In addition, Defendant thousands of complaints and other notices from its customers nationwide advising it of the defects in its Products.

120.   As a direct and proximate cause of Defendant's breach of express warranties, Plaintiff and Class members have sustained damages, an economic loss equal to the total purchase price of these unfit Products, or the difference in value between the Products as warranted and the Products as actually sold, as well as consequential and incidental damages, in the aggregate, in excess of $5 million.

**COUNT V**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(ON BEHALF OF ALL CLASSES)**

121.   Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

122.   Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products, impliedly warranted that the Products were of merchantable quality and, among other warranties, that the Products would pass without objection in the trade or industry, and were fit for the ordinary purpose for which Products are used.

123.   Because of the Products problems described herein, the Products cannot perform their ordinary purpose and would not pass without objection in the trade and industry.

124.   Defendant breached their implied warranties by selling, marketing, and promoting Products with a defect that caused a painful allergic reaction for users of the Products.

125.   Any language used by Defendant to attempt to exclude or limit the availability of implied warranties, remedies, or the period within which to bring claims, is barred by their direct misrepresentations to consumers regarding the existence and nature of the defect. In addition, and in the alternative, any such limitation is unconscionable and void because of Defendant's knowledge of the defect at the time of sale, it fails to conform to the requirements limiting implied

PLAINTIFF'S CLASS ACTION
COMPLAINT

warranties under the applicable laws, and because any such limitation creates a warranty that fails of its essential purpose. By virtue of the defective design or manufacture, Defendant knew or should have known that the Products were at all times defective, including at the time Plaintiff and Class members purchased the Products.

126.   The practices of the Defendant in manufacturing and selling defective Products also constitute a breach of implied warranty of merchantability under the various state statutes where Plaintiff resides, and where Defendant resides and does business throughout the United States.

127.   As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiff and Class members have sustained damages, an economic loss equal to the total purchase price of these unfit Products, or the difference in value between the Products as warranted and the Products as actually sold.

128.   Defendant has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Defendant's knowledge, Defendant refuses to honor its warranty, even though it knows of the inherent defect in the Products.  In addition, Defendant thousands of complaints and other notices from its customers nationwide advising it of the defects in its Products.

**COUNT VI**
**VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT**
**(ON BEHALF OF ALL CLASSES)**

129.   Plaintiff repeats, realleges, and incorporates by reference each of the

foregoing paragraphs of this Complaint as if fully set forth herein.

130.   The Magnuson-Moss Consumer Products Warranties Act, 15 U.S.C. §§ 2301, *et seq.*, provides a private right of action by purchasers of consumer Products against manufacturers or retailers who fail to comply with the terms of an express or implied warranty. See 15 U.S.C. § 2310(d)(1). As demonstrated herein, Defendant failed to comply with the terms of their express and implied warranties with regard to the defective Products.

131.   The Products are "consumer products" as that term is defined in § 2301(1) of the Magnuson-Moss Warranty Act, because they are tangible personal property distributed in commerce and held for sale to consumers for normal household purposes.

132.   Plaintiff and members of the proposed Class are "consumers," as that term is defined in § 2301(3) of the Magnuson-Moss Warranty Act.

133.   Defendant is a "warrantor," as that term is defined in § 2301(5) of the Magnuson-Moss Warranty Act. Defendant offered express and implied warranties on their Products that put Defendant in privity with Plaintiff and the Class.

134.   Defendant's written affirmations of fact, promises and/or descriptions, as alleged herein, are "written warranties" within the meaning of § 2301(6) of the Magnuson-Moss Warranty Act.

135.   Defendant's "implied warranties" are within the meaning of § 2301(7) of the Act.

136.   As a direct and proximate result of Defendant's breaches of the Magnuson- Moss Warranty Act, Plaintiff and Class members have sustained damages, an economic loss equal to the total purchase price of these unfit Products, or the difference in value between the Products as warranted and the Products as actually sold, as well as consequential and incidental damages.

**COUNT VII**
**NEGLIGENCE**
**(ON BEHALF OF ALL CLASSES)**

137.   Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

138.   Defendant owed a duty of care to Plaintiff and the Class in their testing, development, design, manufacturing, marketing, and sale of the Products.

139.   Use of the Products as intended or reasonably foreseeable by Defendant involved the risk of an allergic reaction when used to remove makeup and other adverse effects.

140.   As manufacturers, distributors, and/or sellers of the Products, Defendant had a legal duty to warn consumers of the risks and dangers associated with the Products' use.

141.   Target has received thousands of customer complaints of allergic reaction from the Products on various different platforms, examples of which are cited herein.  Upon receiving these complaints, Defendant had a legal duty to warn customers that the Products could cause an allergic reaction when used to remove

makeup.

142.   Defendant breached this duty of care when they negligently failed to warn consumers about the defects and risks associated with the Products.

143.   Defendant knew or should have known of the Products' defects and risks as previously described and knew that without a warning from Defendant, Plaintiff and the Class could not reasonably be aware of the defects and risks. The absence of warnings is a blatant failure to exercise reasonable care.

144.   In addition, Defendant did not adequately design or test the Products, thereby breaching their duty of care to Plaintiff and the Class by providing them with dangerous and defective Products.

145.   Defendant knew or reasonably should have known that the Products can cause allergic reaction when used to remove makeup.  By marketing and selling the Products regardless of these known dangers, Defendant breached their duty to exercise reasonable care.

146.   Defendant knew or should have known that their failure to exercise reasonable care by performing inadequate testing could result in injury and economic damage to Plaintiff and the Class.

147.   Plaintiff and the Class have suffered injury in fact and lost money as a direct and proximate cause of Defendant's failure to adequately test the Products.

### COUNT VIII
### FRAUD
### (ON BEHALF OF ALL CLASSES)

148.   Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

149.   Defendant has engaged in a common scheme of fraud, through which they intentionally deceived consumers by failing to disclose health risks and defects in the Products, including to Plaintiff and members of the proposed Classes.

150.   Defendant perpetrated the common scheme of fraud complained of herein by omitting, or failing to disclose to Plaintiff and the Classes, that the Products were defective and that in many cases they were not fit for household use.

151.   In addition to their failure to disclosure, Defendant made uniform misrepresentations, in writing, that the Products were safe to use for normal household purposes, that they were suitable for all skin types , and for the purposes for which they were sold.

152.   Because the Products caused an allergic and/or irritating reaction as indicated herein, they were in fact not suitable for household purposes, and Defendant knew they were not suitable for removing makeup.  In fact, the Products are so harsh that they cause users' skin to develop a reaction; to wit, a burning sensation that turns the skin red.

153.   Plaintiff and the members of the Proposed Classes justifiably relied on Defendant's material omissions and failures to disclose.

154.   As a direct and proximate result of Defendant's common scheme of fraud, Plaintiff and Class were damaged.

## COUNT IX
## BREACH OF CONTRACT
## (ON BEHALF OF ALL CLASSES)

155.   Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

156.   Plaintiff and the Class entered into a contract with Defendant to purchase the Products in which they paid money and conferred a benefit on Defendant.

157.   All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

158.   Defendant breached their contract with Plaintiff and the Class by providing defective products which did not perform as advertised.

159.   Plaintiff and the Class did not receive the benefit of their bargain; therefore, they have suffered injury in fact and lost money as a result of Defendant's breach.

## COUNT X
## UNJUST ENRICHMENT
## (in the alternative to Breach of Contract)
## (ON BEHALF OF ALL CLASSES)

160.   Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

161.   To the detriment of Plaintiff and members of the Proposed Classes, Defendant has been, and continues to be, unjustly enriched as a result of their wrongful conduct alleged herein.

PLAINTIFF'S CLASS ACTION
COMPLAINT

162.   Plaintiff and the members of the Proposed Classes conferred a benefit on Defendant when they paid Defendant for Products with a defect that resulted in a value far less than the retail price of the Products.

163.   Defendant was unjustly enriched by the sale of the defective Products as described herein, and Plaintiff and members of the Proposed Classes were unable to return the Products as it was impractical or impossible to return the Products or the cost and time involved in returning to the retail location outweighed the benefit of receiving a refund.

164.   Defendant unfairly, deceptively, unjustly and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

165.   Because no reasonable consumer would purchase Products knowing that it might cause an allergic reaction and/or irritation on the faces of the individuals of all skin types – i.e., the exact individuals to whom Defendant marketed the Products, the Products are worthless.

166.   Plaintiff and members of the Proposed Classes, therefore, seek disgorgement of all wrongfully obtained profits received by Defendant as a result of their inequitable conduct as more fully stated herein.

**COUNT XI**
**DECLARATORY JUDGMENT**
**(ON BEHALF OF ALL CLASSES)**

167.   Plaintiff repeats, realleges, and incorporates by reference each of the

foregoing paragraphs of this Complaint as if fully set forth herein.

168.    An actual and justiciable controversy exists between Defendant and Plaintiff and Class.

169.    Plaintiff and members of the Proposed National and the California Class are entitled to a declaration from this Court that Defendant's conduct is unlawful and in violation of applicable laws as described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of themselves and the members of the Proposed Classes, demand judgment as follows:

A.    For an order certifying the proposed class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff and his counsel to represent the proposed class, appointing counsel for Plaintiff as lead counsel for the respective class;

B.    An order awarding declaratory relief and temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Appropriate injunctive relief;

D.    A declaration that Defendant is financially responsible for all Class notice and the administration of Class relief;

E.    Expressly disclaiming any and all damages pursuant to Cal. Civ. Code. 1750 *et seq*., that the Court enter judgment against Defendant for restitution, disgorgement, punitive damages, statutory damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value, and out-of-pocket costs in an amount to be determined at trial.

F.    An order awarding any applicable statutory and civil penalties;

G.    An order requiring Defendant to pay both pre- and post-judgment

interest on any amounts awarded;

H.     An award of costs, expenses, and attorneys' fees as permitted by law; and

I.     Such other or further relief as the Court may deem appropriate, just, and proper under the circumstances.

## JURY DEMAND

WHEREFORE, Plaintiff demands a trial by jury on all issues so triable as a matter of right.

Dated: October 26, 2017        By:    /s/ Francis J. "Casey" Flynn, Jr.
                                      Francis J. "Casey" Flynn, Jr.
                                      CA State Bar No. 304712
                                      6220 W 3rd St # 415
                                      Los Angeles, CA 90036
                                      Telephone: 314-662-2836
                                      Email: francisflynn@gmail.com

                                      Jasper D. Ward IV (*seeking admission pro hac vice*)
                                      Ashton Smith (*seeking admission pro hac vice*)
                                      **JONES WARD PLC**
                                      The Pointe
                                      1205 E. Washington St., Suite 111
                                      Louisville, Kentucky 40206
                                      Telephone: (502) 882-6000
                                      Facsimile: (502) 587-2007
                                      Email: jasper@jonesward.com
                                              ashton@jonesward.com

PLAINTIFF'S CLASS ACTION COMPLAINT